NOT INTENDED FOR PUBLICATION.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**PETUNIA ROSIER**,

        Plaintiff,

        v.

**ERIC H. HOLDER, JR.**
*Attorney General of the United States sued in his official capacity*,

        Defendant.

Civil Action No. 10-cv-525 (RLW)

## MEMORANDUM OPINION

Plaintiff Petunia Rosier brings this action for race and disability discrimination pursuant to Title VII, 42 U.S.C. § 2000e, *et seq*., and, presumably, the Rehabilitation Act. 29 U.S.C. § 791(b). [1] Presently before the Court is "Defendant's Motion For Partial Dismissal." (Doc. 5.)

---

[1] The Court notes that the basis for Plaintiff's disability claim is unclear. In her complaint, she mentions the Rehabilitation Act, but does not cite to that statute. Rather, she spells out her disability discrimination count as follows:

> Count III
> Violation of Americans With Disabilities Act/Rehabilitation Act
> . . . .
>
> 67. Rosier was a qualified individual with a disability as defined under the Americans With Disabilities Act ("ADA"), 42 USC § 121-01-17.
>
> 70. As a result of Defendant's conduct in violation of the ADA and the Rehabilitation Act, the Plaintiff has been damaged and has suffered severe and extreme physical and emotional distress and loss of front and back pay.

(Compl. at pp. 10-11.)

As an initial matter, the proper citation for the ADA's definition of a qualified individual with a disability is 42 U.S.C. § 12111(8).

To the extent Rosier asserts a claim for constructive discharge, Defendant contends the claim should be dismissed, pursuant to Federal Rule 12(b)(6), for failure to exhaust administrative remedies. For the reasons spelled out below, the Court will grant the motion, in part, and deny, in part. Specifically, the Court will deny the motion with respect to Rosier's Title VII constructive discharge claim, but grant the motion, without prejudice, as it relates to her Rehabilitation Act constructive discharge claim.

## FACTS

Rosier began her employment with the Federal Bureau of Investigation on or around September 22, 1986. [2] In February 2003, the FBI reassigned her to the Quick Response Team document classification unit, where she claims her supervisors discriminated against her based upon race and created a hostile work environment. She filed an internal discrimination complaint with the FBI in November 2003 alleging "a racially hostile work environment," (Compl. ¶ 21), after which she claims her supervisors retaliated against her. Rosier went on disability leave in November 2004 and returned to work in November 2005. (*See* Compl. ¶¶

---

More importantly, the ADA "does not cover federal employees. The Rehabilitation Act, on the other hand, applies to federal employees and 'expressly incorporates the standards of the ADA for claims of employment discrimination.'" *Powell v. Castaneda*, 390 F. Supp.2d 1, 11 n.12 (D.D.C. 2005) (citation omitted); *see* 42 U.S.C § 12111(5) ("The term 'employer' [in the ADA] does not include . . . the United States, a corporation wholly owned by the government of the United States, or an Indian tribe."). In this Circuit, Section 501 of the Rehabilitation Act provides the sole mechanism for asserting disability claims brought by federal employees. *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003); *see* 42 U.S.C. § 791(b). Accordingly, Plaintiff's ADA claims will be dismissed, with prejudice.

2 At this juncture, the Court must assume the facts alleged by the Plaintiff are true. *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993).

35-36.) The discrimination, retaliation, and hostile treatment continued upon her return, but also included discrimination based on her disability.

On several occasions while assigned to the Quick Response team, Rosier sought a transfer to another division, but her requests were ignored or denied. According to her complaint, in January 2006 Rosier met with an FBI EEO counselor to discuss her "renewed concerns of hostile environment and retaliation." (Compl. ¶ 41.) On March 17, Rosier apparently filed a formal EEO complaint with the FBI in which she alleged disability discrimination, retaliation and a hostile work environment. (*See* Pl.'s Ex. 1.) In June 2006, the FBI expanded her March 2006 complaint to include an investigation regarding the following charges:

> Whether complainant was discriminated against based on her disability (physical/mental) when from February 2006, until the filing of this complaint, complainant was not provided with a reassignment to another division to accommodate her disability.

(Pl.'s Ex. 2.)

Around this same time, the FBI began transferring some employees from its Washington, D.C. location, where she worked, to a location in Virginia. Rosier requested approval to remain in the Washington, D.C. office, but was told she would be "the first to go to Winchester, [Virginia]." (Compl. ¶ 52.) On July 27, 2006, she received a letter advising her that she had fifteen days in which to decide whether she would accept the transfer. (Def.'s Ex. 5 at p. 3.) She responded by accepting the relocation offer, but indicating she was out on disability. (Def.'s Ex. 2.) Ultimately, Rosier retired one year later on disability, on or around August 30, 2007. (Pl.'s Ex. 5.)

3

In the complaint presently before the Court, Rosier lists three Counts. In "Count I Discrimination Based on Race," Rosier asserts hostile work environment claims based upon race. In "Count II Retaliatory Harassment for Activities Protected by Title VII," she claims the FBI created a hostile work environment in retaliation for her participation in EEO activities. She also claims that the retaliation continued until she was "constructively terminated" from her employment. (Compl. ¶ 64.) Finally, in "Count III Violation of Americans with Disabilities Act/Rehabilitation Act" she alleges disability discrimination and retaliation.

Although Rosier does not allege constructive discharge as an independent count in her complaint, she does allege constructive discharge in several of the numbered paragraphs found in the "Facts" section of her complaint, (*See* Compl. ¶¶ 44, 53), and her factual allegations are incorporated by reference into each of her three individual counts. (Compl. ¶¶ 54, 58, 66.) Thus, for purposes of this motion, the Court will construe this complaint as raising constructive discharge claims in all three counts, race discrimination, retaliation and disability discrimination/retaliation.

Defendant essentially moves to dismiss all claims based on constructive discharge/ termination.

**LEGAL STANDARDS**

**A. Exhaustion of Administrative Remedies & Standards of Review:**

1. <u>**Title VII**</u>**:**

"Title VII plaintiffs are normally expected to exhaust administrative remedies and the plaintiff who fails to comply, to the letter, with administrative deadlines 'ordinarily will be

denied a judicial audience.'" *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir.1985) (citations omitted). To satisfy the exhaustion requirement, federal employees "must initiate contact with [an internal agency EEO] Counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "Because untimely exhaustion of [Title VII] administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citations omitted).

Title VII exhaustion requirements are not jurisdictional, but rather function like a statute of limitations. Therefore, a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted" is the appropriate vehicle to challenge an alleged failure to exhaust. *See Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011); *Gordon v. National Youth Work Alliance*, 675 F.2d 356, 360 (D.C. Cir. 1982). However, when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In so doing, the Court must allow all parties "a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. Here, both parties refer to documents outside of the complaint and there is nothing in the record which might indicate the parties did not have a reasonable opportunity to present all pertinent material. Accordingly, the Court will treat the FBI's motion as a motion for summary judgment as it relates to Rosier's Title VII claims.

The party seeking summary judgment bears the initial burden of demonstrating no genuine issues of material fact exist. *See* Fed. R. Civ. P. 56. When determining whether genuine issues of material fact exist, the Court must draw all justifiable inferences from the evidence in

favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), *cited in Cruz-Packer v. Dist. of Columbia*, 539 F. Supp.2d 181, 189 (D.D.C. 2008).

2. **Rehabilitation Act:**

In contrast to Title VII claims, the law of this Circuit is that "administrative exhaustion under the Rehabilitation Act is a jurisdictional requirement . . . ." *Sataki v. Broadcasting Bd. Of Governors*, 733 F. Supp.2d 1, 13 n.14 (D.D.C. 2010) (citing *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006)). Thus, the proper method for challenging exhaustion under the Rehabilitation Act is a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See Porter v. Jackson*, 668 F. Supp.2d 222, 230 n. 6 (D.D.C. 2009) (citations omitted). Even in the absence of a Rule 12(b)(1) motion, the Court has an independent duty to assess jurisdiction. *Mt Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 278 (1977).

In order to access jurisdiction under Rule 12(b)(1), the Court is not limited to the confines of the complaint. Rather, the Court may go outside the pleadings and consider evidence found in the record, when necessary to fully resolve 12(b)(1) jurisdictional challenges. *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992). Whether or not the Court relies on documents outside of the complaint, the non-moving party "is entitled to all <u>reasonable</u> inferences that can be drawn in her favor." *Artis*, 630 F.3d at 1036 (emphasis in orginal).

## ANALYSIS

### A. Title VII Claims:

Defendant makes three observations in support of its argument that Rosier failed to exhaust her administrative remedies. First, Defendant asserts Rosier failed to allege in her complaint that she satisfied the administrative exhaustion requirement. Yet she does plead something with respect to exhaustion: in Section III of her complaint entitled "Exhaustion of Administrative Remedies," Rosier notes she filed an internal discrimination complaint with the DOJ and a subsequent EEOC charge involving her discrimination and retaliation claims. (Compl. p. 1 – 2.) Although she does not allege she exhausted her administrative remedies in a timely manner, this omission is irrelevant because "failure to exhaust administrative remedies is an affirmative defense, and therefore [Plaintiff is] not required to anticipate it in h[er] complaint." *Mondy v. Secretary of the Army*, 845 F.2d 1051, 1059 n.3 (D.C. Cir. 1988). Instead, "the defendant bears the burden of pleading and proving [failure to exhaust]. If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense. *Bowden*, 106 F.3d at 437 (citations omitted). Thus, Defendant is not entitled to summary judgment simply because Rosier failed to allege in her complaint that she timely exhausted her administrative remedies.

Second, the FBI claims there is no record of any attempt by Rosier to exhaust her administrative remedies with respect to her constructive discharge allegations. This argument essentially boils down to a timeliness argument: the FBI points out Rosier's last contacts with an EEO counselor were in 2006, but she did not retire until approximately August 2007. Thus, argues the FBI, Rosier could not have contacted an EEO counselor within 45 days of "the

matter alleged to be discriminatory," namely her retirement. *See* 29 C.F.R. § 1614.105(a)(1).

In support of its argument, the FBI failed to attach any documentary evidence regarding the precise nature of the issues Rosier raised in her EEO complaints. Instead, the FBI attempted to rely on the assertions found in Rosier's unverified complaint and documents relating to Rosier's retirement. Obviously, the information found in these documents does not provide the full story and, more importantly, failure to exhaust is an affirmative defense that the FBI bears the burden of pleading and proving. *See Bowden*, 106 F.3d at 437. The FBI's submission to the Court completely fails to meet this burden.

Even if the FBI had met its burden, Rosier responded with sufficient evidence to survive the current motion. Although she points to no documents from the internal FBI investigation that mention constructive discharge, Rosier offers two documents from the investigation ultimately conducted by the EEOC in support of her timeliness argument. One document contains excerpts from a deposition, in which she explains she felt as if she was "forced out" of her job:

> Q. . . . . Are you asking for the difference in the pay that you are receiving currently and what you would have earned had you continued to be employed with the federal government?
>
> A. Yes.
>
> Q. Why did you retire?
>
> A. I retired on depression. I feel like I was forced out. I didn't have a choice. I either go to Winchester or have no job. And I wasn't going to Winchester because the same management team was there. . . . I couldn't take that.

(Pl.'s Ex. 3 at pp. 116-17.)

The other document Rosier relies upon contains excerpts from her interrogatory

8

responses, in which she mirrors those sentiments:

> 4. Describe your specific reason(s) for believing that any person identified in your response to interrogatory 3, took such actions(s) or made such statements(s) based upon your alleged disability (physical and mental).
>
> **Answer**: . . . . The mental disability (stress/depression) were directly related to the abusive working environment. . . . In reference to the relocation to Winchester, Virginia, my doctors indicated that due to my physical and mental disability, the commute to Winchester would not be good for me. In addition, my supervisors, including Steward, would be there at Winchester continuing the hostile environment. I submitted documentation . . . explaining that I was disabled and not be able to [sic] transfer to Winchester. However, the package I received gave me only two options – either to go to Winchester or retire. If I checked no, I would lose my job. I felt that I had no other choice but to check yes.
>
> 14. Describe in detail the relief you now seek in this case.
>
> **Answer:** Front pay from the date of my constructive termination to the date I would normally have retired (65). . . .

(Pl.'s Ex. 4 at pp. 11, 18.) These documents create a genuine issue of material fact regarding whether Rosier put the FBI on notice that she was alleging constructive discharge.

In response to these documents, the FBI merely asserts that mentioning the constructive discharge claim at the agency level "falls woefully short of proper Title VII exhaustion." (Doc. 9, Def.'s Reply at 3.) This assertion ignores the law of this Circuit, however:

> [N]otice may be adequate where a claim is brought to the agency's attention "during the course of the administrative proceeding" and "before it issued its final decision" even if the argument or claim is not clearly set out in the complaint.

*Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (citations omitted).

Finally, the FBI's timeliness defense fails because there is an argument Rosier's hostile environment claim and her constructive discharge claim are connected; specifically, the hostile conduct culminated in her constructive discharge. The ongoing nature of the conduct which

9

gives rise to hostile environment claims makes the time-line for reporting them more expansive: "A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *National RR. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). Inasmuch as some of her hostile environment claims were timely, Rosier has an argument that the constructive discharge claim was also timely.

Citing *Short v. Chertoff*, 526 F. Supp.2d 37, 43 (D.D.C. 2007), the FBI argues that Rosier cannot use exhaustion of her hostile environment and retaliation claims to save her constructive discharge claim. *Short* does not support FBI's position because the plaintiff in that case

> was terminated from employment <u>after the EEOC concluded its investigation</u> and had already denied the plaintiff's complaints. The timing of events, thus, forestalls t he conclusion t hat t he c onstructive di scharge c laim c ould reasonably be expected to grow out of the initial complaint.

*Id*. at 43-44 (emphasis added).

Conversely, in the instant Case, the August 2008 date found on the deposition and interrogatories establishes that the administrative proceedings continued past Rosier's August 2007 alleged constructive discharge. Moreover, in *Mayers v. Laborers Health & Safety Fund of North America*, 478 F.3d 364, 370 (D.C. Cir. 2007), the D.C. Circuit noted:

> We h ave n ot yet h ad o ccasion t o s ay w hether, af ter *Morgan,* constructive discharge claims (like hostile work environment claims) by their "very nature involve [ ] repeated conduct," and are thus amenable to continuing violations analysis. *Morgan,* 536 U.S. at 115, 122 S.Ct. 2061.

Thus, the D.C. Circuit has not foreclosed the possibility that exhaustion of a hostile environment

claim can save an otherwise untimely constructive discharge claim.

At this point, the Court finds that defendant has failed to meet its burden on the motion to dismiss, as it relates to Rosier's Title VII claim.

**B. Rehabilitation Act Claim:**

In contrast to Title VII exhaustion, "under the Rehabilitation Act, exhaustion is a jurisdictional requirement that a plaintiff has the burden to plead and prove." *See Carty v. District of Columbia*, 699 F. Supp.2d 1, 2 n.2 (D.D.C. 2010) (citation omitted), *aff'd on other grounds*, 2010 WL 4340405 (D.C. Cir. Oct. 21, 2010). The evidence presently before the Court is not sufficient to meet this burden. In Section III of Rosier's complaint, where she mentions exhaustion of administrative remedies, she notes that she filed complaints of discrimination and retaliation with the DOJ and EEOC, but she does not specifically mention disability discrimination. Later, in paragraph 21 of her fact section, she mentions filing an EEOC complaint alleging hostile environment based on race. Yet, she does not mention her disability claims, even though she suffered the injury upon which she bases her disability claim prior to filing the EEOC charge. To the extent she discusses her involvement in other administrative proceedings, there are no allegations <u>in the complaint</u> that provide a basis upon which to find she raised her disability claim before an administrative agency or that she did so in a timely manner.

Although Rosier attached documents to her brief indicating she raised the disability constructive discharge allegations during the administrative proceedings, she cannot cure her pleading deficiency simply by attaching documents to her brief. Consistent with recent pronouncements from the United States Supreme Court:

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). In the instant case, Rosier's complaint does not contain "sufficient factual matter" from which this Court may "draw the reasonable inference" that she timely exhausted her Rehabilitation Act claims

Thus, to the extent Rosier brings a constructive discharge claim under the Rehabilitation Act, said claims will be dismissed, without prejudice, pursuant to Rule 12(b)(1). However, the Court will grant Rosier leave to amend her complaint.

## CONCLUSION

For the reasons set forth above, by separate order, the FBI's motion will be: (1) denied, without prejudice, as to Rosier's Title VII claims; (2) granted, without prejudice, as to Rosier's Rehabilitation Act constructive discharge claims. Additionally, Rosier's ADA claim will be dismissed with prejudice.

SO ORDERED.

June 24, 2011

/s/
_____
Robert L. Wilkins
United States District Judge